UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MARTHA SANTIAGO,<br>Defendant. | Case No. 19-cr-00047-SI-1<br><br>**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**<br>Re: Dkt. No. 12 |

Having considered the papers submitted and arguments made during the April 5, 2019 hearing, the Court hereby DENIES defendant's motion to dismiss.

## BACKGROUND

On January 18, 2012, defendant Martha Santiago was sentenced to 84 months in custody and five years supervised release after pleading guilty to wire fraud, aggravated identity theft, and conspiracy to possess with intent to distribute methamphetamine. 11-cr-108-SI, Dkt. No. 63 (United States District Court Judgement). On July 22, 2018, defendant began her term of supervised release. Dkt. No. 12-2 at 2 (Def. Mot., Ex. B (Form 12, attached to Petition for Arrest Warrant)). The terms of defendant's supervised release require that defendant: (1) not commit another federal, state, or local crime; (2) not associate with persons engaged in criminal activity; and (3) not associate with anyone convicted of a felony, unless permitted to do so by a probation officer.[1] *Id.*

On November 15, 2018, approximately four months into defendant's supervised release, the defendant was present when the United States Marshal Service attempted to apprehend the fugitive Michael Anthony Haga in Berkeley, California. *Id.* During the United States Marshal's attempt to bring the fugitive into custody, defendant "became enraged and used the vehicle she was driving to

---

[1] Defendant was and continues to be subject to other terms of supervised release not implicated by this incident. 11-cr-108-SI, Dkt. No. 63.

repeatedly strike the United States Marshal's vehicles, causing severe damage and potential harm to the federal officers" in attempt to flee with Mr. Haga. *Id.* at 3. The United States Marshals and Berkeley Police officers ultimately apprehended the defendant and Mr. Haga. *Id.* Once apprehended, defendant was found to be in possession of what "appear[ed] to be over a hundred credit and/or bank cards belonging to other individuals. She was also in possession of devices commonly used to commit credit card fraud." *Id.*

The next day, on November 16, 2018, the Probation Office in the United States District Court for the Northern District of California filed a Petition for Arrest Warrant for Offender Under Supervision for the defendant. Dkt. No. 12-2. The petition alleged there was probable cause to believe defendant violated her supervised release terms. The Form 12 attached to the Arrest Warrant charged defendant with violating the "not commit another crime" provision of supervised release by doing the following: (1) Assaulting, Resisting, or Impeding Certain Government Officers or Employees in violation of 18 U.S.C. § 111(a)(1) and Using a Deadly or Dangerous Weapon in violation of 18 U.S.C. § 111(b); (2) Evading a Police Officer in violation of California Vehicle Code 2800.1; (3) Aggravated Identify Theft in violation of 18 U.S.C. § 1028A; and (4) associating with a convicted felon. *Id.* The arrest warrant issued of November 16, 2018. *Id.*; Dkt. No. 12-1 (Arrest Warrant).

On January 29, 2019, the United States filed an indictment against the defendant charging her with three counts of assault with a deadly weapon against federal officers in violation of 18 U.S.C. §§ 111(a) and 111(b). Dkt. No. 1. On March 1, 2019, defendant filed a motion to dismiss based on a violation of the Speedy Trial Act. Dkt. No. 12. Defendant alleges that the government violated the Speedy Trial Act by waiting more than thirty days from the date on which defendant was arrested to file an indictment.[2]

---

[2] Ms. Santiago was arrested on the federal warrant on November 16, 2018, and the government filed the indictment on January 29, 2019. Seventy-five days ran between Ms. Santiago's federal arrest based on violation of the terms of supervised release and the filing of the indictment.

2

**DISCUSSION**

The Speedy Trial Act provides that, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b) (2008). Furthermore, "[i]f, in the case any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) . . . such charge against that individual contained in such complaint shall be dismissed or otherwise dropped." 18 U.S.C. § 3162(a)(1) (1975). "For the dismissal sanction of section 3162(a)(1) to apply, a suspect must either be formally charged at the time of or following his arrest, or be subject to some continuing restraint imposed in connection with the charge on which he is eventually tried." *United States v. Hoslett*, 998 F.2d 648, 652 (9th Cir. 1993).

The Ninth Circuit has consistently held that the Speedy Trial Act is not implicated when a defendant is arrested pursuant to a supervised release violation. *See, e.g.*, *Hoslett*, 998 F.2d at 652-53 (indictment returned one year after arrest for supervised release violation); *U.S. v. Contreras*, 63 F.3d 852, 854-55 (9th Cir. 1995) (indictment returned seven months after arrest for supervised release violation).[3] The Ninth Circuit in *Hoslett* explained that the Speedy Trial Act is not triggered by a defendant's arrest for a supervised release violation because that detention is not "in connection with" the criminal charges on which a defendant is later tried within the meaning of 18 U.S.C. § 3161(b). 998 F.2d at 653. The purpose of the detention for the supervised release violation is to permit the United States Parole Commission the opportunity to "obtain further information for its own proceedings . . . not on account of the government's need to gather evidence to obtain an indictment, which is one of the evils to which section 3161(b) is primarily directed." *Id.*

The instant litigation closely parallels the facts in *Contreras*. 63 F.3d at 855. There, the defendant was sentenced to three years of supervised release prohibiting him from re-entering the

---

[3] Defendant's reply brief requests that three cases in the government's opposition be stricken for failure to comply with Ninth Circuit Rule 36-3 prohibiting citations to unpublished decisions issued prior to January 1, 2007. Dkt. No. 16 at 2. The Court grants the motion with respect to *United States v. Bustamante*, 132 F.3d 40 (9th Cir. 1997) and *United States v. Passmore*, 87 F.3d 1324 (9th Cir. 1996). However, the third case, *United States v. Contreras*, 63 F.3d 852 (9th Cir. 1995), is a published decision. As such the motion to strike is denied with respect to *Contreras*.

United States. On January 29, 1993, during his supervised release, defendant was arrested on drug charges in the United States. *Id.* While in custody for the drug charge, defendant was further indicted on charges for violating the conditions of his supervised release by re-entering the country. *Id.* On November 18, 1993 (1) the drug charge was dismissed, (2) the defendant admitted to violating the terms of his supervised release, and (3) he was newly indicted for Aggravated Illegal Reentry into the United States. *Id*. The defendant in *Contreras* unsuccessfully made the same argument defendant makes in the instant action: that the Speedy Trial Act was violated because the same conduct formed the basis for both the supervised release charge as well as a separate indictment. Ms. Santiago's argument ignores the Ninth Circuit's holding in *Contreras*:

> … we do not use a "same conduct" standard for purposes of applying the Speedy Trial Act. We have held that 18 U.S.C. section 3161(b) requires something more than that the acts leading to the detention be the same as those underlying the eventual criminal charge. In *Hoslett* we intimated that "something more" might mean using an earlier charge as a ruse for delay in obtaining an indictment. Here we do not see "something more." We see, rather, that [defendant] was held in custody on both the drug charge and the supervised release violation until November 18, the date on which he was indicted on the illegal reentry. The district court found that [defendant's] detention from April to November was not on account of a government effort to gather evidence to obtain an indictment. The finding is not clearly erroneous.

*Contreras*, 63 F.3d at 855 (internal quotes and citations omitted).

There is no evidence Ms. Santiago's detention was "something more," a delay or "ruse" to gather evidence for the January 2019 indictment. Indeed, Ms. Santiago makes no such argument.

Therefore, like in *Hoslett* and *Contreras*, the government did not violate the Speedy Trial Act. Defendant's motion to dismiss is DENIED.

## CONCLUSION

For the foregoing reasons, the United States did not violate the Speedy Trial Act and the Court DENIES defendant's motion to dismiss.

**IT IS SO ORDERED**.

Dated: April 8, 2019

_____
SUSAN ILLSTON
United States District Judge

4